# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

CITY OF CHICAGO,

*Plaintiff-Appellee,*

*v.*

MATTHEW G. WHITAKER, ACTING ATTORNEY GENERAL OF THE UNITED STATES,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Illinois, No. 17-cv-5720
Before the Honorable Harry D. Leinenweber

## BRIEF FOR PLAINTIFF-APPELLEE

EDWARD N. SISKEL
Corporation Counsel of the City of Chicago
BENNA RUTH SOLOMON
Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
ANDREW W. WORSECK
Chief Assistant Corporation Counsel
JUSTIN A. HOUPPERT
SCOTT D. SPEARS
Assistant Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, IL 60602
(312) 744-7764

RONALD S. SAFER
MATTHEW C. CROWL
NICK KAHLON
LAURA KLEINMAN
TAL C. CHAIKEN
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 West Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700

JAMIE S. GORELICK
DAVID W. OGDEN
ARI HOLTZBLATT
ARI SAVITZKY
JUSTIN BAXENBERG
MOLLY M. JENNINGS
JACK STARCHER
ARI EVANS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

DEBO P. ADEGBILE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-2885

Short Caption: City of Chicago v. Sessions

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED
         AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   The City of Chicago

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

(3)   If the party or amicus is a corporation:

   i)   Identify all its parent corporations, if any; and

         N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

         N/A

Attorney's Signature: /s Jamie S. Gorelick                          Date: 11/8/2018

Attorney's Printed Name: Jamie S. Gorelick

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No _____X

Address: 1875 Pennsylvania Ave NW, Washington, DC 20006

Phone Number: 202-663-6500                     Fax Number: 202-663-6363

E-Mail Address: jamie.gorelick@wilmerhale.com

CIRCUIT RULE 26.1   DISCLOSURE  STATEMENT

Appellate Court No: 18-2885

Short Caption: City of Chicago v. Sessions

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

  The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel  is required to complete  the entire  statement and to use N/A for any information that  is not applicable if this form is used.

  [ ]    PLEASE CHECK HERE  IF ANY INFORMATION ON THIS FORM  IS NEW OR REVISED
         AND INDICATE  WHICH INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

      The City of Chicago

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

      Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

          N/A

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

          N/A

Attorney's Signature:  /s David W. Ogden                              Date:  11/8/2018

Attorney's Printed Name:  David W. Ogden

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____    No _____ X

Address:  1875 Pennsylvania Ave NW, Washington, DC 20006

Phone Number:  202-663-6440                    Fax Number:  202-663-6363

E-Mail Address:  david.ogden@wilmerhale.com

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-2885

Short Caption: City of Chicago v. Sessions

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

   [ ]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED
         AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   The City of Chicago

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

         N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

         N/A

Attorney's Signature: /s Debo P. Adegbile                          Date: 11/8/2018

Attorney's Printed Name: Debo P. Adegbile

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No ___X___

Address: 1875 Pennsylvania Ave NW, Washington, DC 20006

Phone Number: 212-295-6717                          Fax Number: 212-230-8888

E-Mail Address: debo.adegbile@wilmerhale.com

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __18-2885__

Short Caption: __City of Chicago v. Sessions__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

    [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    The City of Chicago

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

(3)    If the party or amicus is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

        N/A

Attorney's Signature: __/s Ari Holtzblatt__    Date: __11/8/2018__

Attorney's Printed Name: __Ari Holtzblatt__

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    Yes _____    No ___X___

Address: __1875 Pennsylvania Ave NW, Washington, DC 20006__

Phone Number: __202-663-6964__    Fax Number: __202-663-6363__

E-Mail Address: __ari.holtzblatt@wilmerhale.com__

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-2885

Short Caption: City of Chicago v. Sessions

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

   [ ]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED
         AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   The City of Chicago
   _____
   _____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP
   _____
   _____

(3)   If the party or amicus is a corporation:

   i)   Identify all its parent corporations, if any; and
        N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:
        N/A

Attorney's Signature: /s Ari Savitzky                          Date: 11/8/2018

Attorney's Printed Name: Ari Savitzky

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No ____X____

Address: 1875 Pennsylvania Ave NW, Washington, DC 20006
_____

Phone Number: 202-663-6232                    Fax Number: 202-663-6363

E-Mail Address: ari.savitzky@wilmerhale.com

# CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 18-2885

Short Caption: City of Chicago v. Sessions

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[ ]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

The City of Chicago

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

(3) If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: /s Molly Jennings                    Date: 11/8/2018

Attorney's Printed Name: Molly Jennings

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No _____X

Address: 1875 Pennsylvania Ave NW, Washington, DC 20006

Phone Number: 202-663-6947                    Fax Number: 202-663-6363

E-Mail Address: molly.jennings@wilmerhale.com

# CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: __18-2885__

Short Caption: __City of Chicago v. Sessions__

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel  is required to complete  the entire  statement and to use N/A for any information that  is not applicable  if this form is used.

   [  ]    PLEASE  CHECK  HERE  IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED
           AND INDICATE  WHICH   INFORMATION IS NEW OR REVISED.

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   __The City of Chicago__

   _____

   _____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   __Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP__

   _____

   _____

(3)   If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

      __N/A__

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      __N/A__

===============================================================

Attorney's Signature:  __/s Jack Starcher__                    Date:  __11/8/2018__

Attorney's Printed Name:  __Jack Starcher__

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____      No _____X__

Address:  __1875 Pennsylvania Ave NW, Washington, DC 20006__

   _____

Phone Number:  __202-663-6017__              Fax Number:  __202-663-6363__

E-Mail Address:  __jack.starcher@wilmerhale.com__

CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: __18-2885__

Short Caption: __City of Chicago v. Sessions__

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel  is required to complete  the entire  statement and to use N/A for any information that  is not applicable if this  form is used.

[ ]     PLEASE CHECK  HERE  IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED
        AND INDICATE  WHICH   INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

  __The City of Chicago__

  _____

  _____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  __Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP__

  _____

  _____

(3)  If the party or amicus is a corporation:

  i)  Identify all its parent corporations, if any; and

     __N/A__

  ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

     __N/A__

Attorney's Signature:  __/s Justin Baxenberg__          Date:  __11/8/2018__

Attorney's Printed Name:  __Justin Baxenberg__

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____     No _____X__

Address:  __1875 Pennsylvania Ave NW, Washington, DC 20006__

  _____

Phone Number:  __202-663-6151__          Fax Number:  __202-663-6363__

E-Mail Address:  __justin.baxenberg@wilmerhale.com__

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __18-2885__

Short Caption: __City of Chicago v. Sessions__

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[   ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    The City of Chicago

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Wilmer Cutler Pickering Hale and Dorr LLP; Riley Safer Holmes & Cancila LLP

(3) If the party or amicus is a corporation:

    i)   Identify all its parent corporations, if any; and

        N/A

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

        N/A

Attorney's Signature: __/s Ari Evans__       Date: __11/8/2018__

Attorney's Printed Name: __Ari Evans__

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    Yes _____    No _____X__

Address: __1875 Pennsylvania Ave NW, Washington, DC 20006__

Phone Number: __202-663-6776__       Fax Number: __202-663-6363__

E-Mail Address: __ari.evans@wilmerhale.com__

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-2885

Short Caption: The City of Chicago v. Jefferson B. Sessions III

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

The City of Chicago

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Riley Safer Holmes & Cancila LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

None

Attorney's Signature: s/ Ronald S. Safer     Date: 11/8/2018

Attorney's Printed Name: Ronald S. Safer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** ☒

Address: Three First National Plaza, 70 West Madison Street, Suite 2900, Chicago, Illinois 60602

Phone Number: 312-471-8736     Fax Number: 312-471-8701

E-Mail Address: rsafer@rshc-law.com

rev. 01/15 GA

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __18-2885__

Short Caption: __The City of Chicago v. Jefferson B. Sessions III__

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    The City of Chicago

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Riley Safer Holmes & Cancila LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3) If the party or amicus is a corporation:

    i) Identify all its parent corporations, if any; and

      None

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      None

Attorney's Signature: __s/ Tal C. Chaiken__      Date: __11/8/2018__

Attorney's Printed Name: __Tal C. Chaiken__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** _____    **No** ☒

Address: __Three First National Plaza, 70 West Madison Street, Suite 2900, Chicago, Illinois 60602__

Phone Number: __312-471-8725__      Fax Number: __312-471-8701__

E-Mail Address: __tchaiken@rshc-law.com__

rev. 01/15 GA

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-2885

Short Caption: The City of Chicago v. Jefferson B. Sessions III

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[   ]**     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    The City of Chicago

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Riley Safer Holmes & Cancila LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3) If the party or amicus is a corporation:

    i) Identify all its parent corporations, if any; and

      None

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      None

Attorney's Signature: s/ Matthew C. Crowl      Date: 11/8/2018

Attorney's Printed Name: Matthew C. Crowl

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** \_\_\_\_\_    **No**   ✕

Address: Three First National Plaza, 70 West Madison Street, Suite 2900, Chicago, Illinois 60602

Phone Number: 312-471-8720      Fax Number: 312-471-8701

E-Mail Address: mcrowl@rshc-law.com

rev. 01/15 GA

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-2885

Short Caption: The City of Chicago v. Jefferson B. Sessions III

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

The City of Chicago

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Riley Safer Holmes & Cancila LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

None

Attorney's Signature:  s/ Laura Kleinman          Date: 11/8/2018

Attorney's Printed Name:  Laura Kleinman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** _____    **No** ☒

Address:  Three First National Plaza, 70 West Madison Street, Suite 2900, Chicago, Illinois 60602

Phone Number:  312-471-8685          Fax Number:  312-471-8701

E-Mail Address:  lkleinman@rshc-law.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-2885

Short Caption: The City of Chicago v. Jefferson B. Sessions III

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[   ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

The City of Chicago

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Riley Safer Holmes & Cancila LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

None

Attorney's Signature: s/ Nick Kahlon     Date: 11/8/2018

Attorney's Printed Name: Nick Kahlon

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____    **No** ✕

Address: Three First National Plaza, 70 West Madison Street, Suite 2900, Chicago, Illinois 60602

Phone Number: 312-471-8755     Fax Number: 312-471-8701

E-Mail Address: nkahlon@rshc-law.com

rev. 01/15 GA

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................. iii

INTRODUCTION ........................................................................... 1

JURISDICTIONAL STATEMENT ................................................ 4

ISSUES PRESENTED ................................................................... 4

STATEMENT OF THE CASE ........................................................ 4

    A.    Chicago's Welcoming City Ordinance ("WCO") ................................ 4

    B.    The JAG Program ..................................................... 6

    C.    New Policy Conditions On The JAG Program ................. 8

    D.    Chicago's APA Claim ................................................ 9

    E.    The Preliminary Injunction .......................................... 10

    F.    The Permanent Injunction ........................................... 12

SUMMARY OF ARGUMENT ....................................................... 13

ARGUMENT ................................................................................. 16

I.    THE COMPLIANCE CONDITION IS UNLAWFUL ........................... 16

    A.    "All Other Applicable Federal Laws" Refers Only To Laws That Apply To Federal Grants Or Grantees ..................... 18

    B.    "All Other Applicable Federal Laws" Does Not Encompass Unconstitutional Laws Like Section 1373 ............... 23

        1.    Unconstitutional laws are not "applicable … laws" ................................................................ 24

        2.    Section 1373 is unconstitutional ....................... 26

II.    THE NOTICE AND ACCESS CONDITIONS ARE UNLAWFUL ........... 35

III. THE DISTRICT COURT PROPERLY ENJOINED THE UNLAWFUL CONDITIONS ON A PROGRAM-WIDE BASIS ............................................... 41

    A.    Federal Courts Can Enjoin Illegal Agency Action On A Program-Wide Basis, Under The APA And Article III ...................................................................................... 41

           1.    The APA mandates program-wide relief ............................ 42

           2.    Federal courts have broad authority to enjoin unlawful action .................................................................. 45

    B.    The Attorney General's Novel Rule Against Program-Wide Injunctions Lacks Support .................................. 50

           1.    The Attorney General's Article III argument fails ......................................................................................... 50

           2.    The Attorney General's equitable-principles argument fails ...................................................................... 54

           3.    The Attorney General's reliance on *Mendoza* is misplaced ............................................................................. 57

           4.    The Attorney General's reliance on Rule 23 is misplaced ............................................................................. 59

    C.    The Program-Wide Injunction Was Proper ................................ 61

CONCLUSION ................................................................................................ 63

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page

*Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257 (2015) .................................................................................. 51

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ......................... 21

*Allen v. City of Chicago*, 865 F.3d 936 (7th Cir. 2017).................................... 40

*Alvarez v. Smith*, 558 U.S. 87 (2009) ................................ 52

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)................................ 60

*American Surety Co. v. Marotta*, 287 U.S. 513 (1933) .................................... 38

*Arizona v. United States*, 567 U.S. 387 (2012) ................................. 34

*Atlas Life Insurance Co. v. W.I. Southern, Inc.*, 306 U.S. 563 (1939) .................................................................................. 55

*Board of Education of Highland Local School District v. United States Department of Education*, 208 F. Supp. 3d 850 (S.D. Ohio 2016) ........................................................................ 58

*Bond v. United States*, 572 U.S. 844 (2014) .................................... 34

*Branch v. Smith*, 538 U.S. 254 (2003) ............................... 25

*Bresgal v. Brock*, 843 F.2d 1163 (9th Cir. 1987) ............................. 59

*Califano v. Yamasaki*, 442 U.S. 682 (1979)........................ 45

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ................................. 19

*City & County of San Francisco v. Sessions*, 2018 WL 4859528 (N.D. Cal. Oct. 5, 2018)................................................... 31, 49

*City of Arlington v. FCC*, 569 U.S. 290 (2013) ................................. 16

*City of Los Angeles v. McLaughlin*, 865 F.2d 1084 (9th Cir. 1989)................... 7

*City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579 (E.D. Pa. 2017) ......................................................................... 49

*City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289 (E.D. Pa. 2018) ...................................................................................... 31

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ..................................... 50

*Decker v. O'Donnell*, 661 F.2d 598 (7th Cir. 1980) .............................. 46, 47, 54

*Department of Treasury, IRS v. Federal Labor Relations Authority*, 494 U.S. 922 (1990) ................................................................ 23

*Dimension Financial Corp. v. Board of Governors of Federal Reserve System*, 744 F.2d 1402 (10th Cir. 1984) ................................... 44

*DOT v. Association of American Railroads*, 135 S. Ct. 1225 (2015) .............. 62

*Earth Island Institute v. Ruthenbeck*, 490 F.3d 687 (9th Cir. 2007).............. 43

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568 (1988) ............................... 21

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................... 59

*Epsilon Electronics, Inc. v. U.S. Department of Treasury*, 857 F.3d 913 (D.C. Cir. 2017) ................................................................................ 37

*Fields v. Smith*, 653 F.3d 550 (7th Cir. 2011) ................................................ 47

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010)................................................................................ 44

*Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424 (7th Cir. 2006)......................................................................................... 37, 38

*Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973) ............................................ 61

*Gill v. Whitford*, 138 S. Ct. 1916 (2018)................................................... 51, 53

*Gonzales v. Oregon*, 546 U.S. 243 (2006) ........................................................ 16

*Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 545 U.S. 409 (2005) ......................................... 22

*Gregory v. Ashcroft*, 501 U.S. 452 (1991)................................................. 16, 27

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) .................................................................... 55

*Harmon v. Thornburgh*, 878 F.2d 484 (D.C. Cir. 1989) .................................. 43

*Heartwood, Inc. v. U.S. Forest Service*, 73 F. Supp. 2d 962 (S.D. Ill. 1999) ................................................................................ 44

*Hibbs v. Winn*, 542 U.S. 88 (2004) ............................................................ 18, 48

*Horina v. City of Granite City*, 538 F.3d 624 (7th Cir. 2008) ...................... 47

*Hubbard v. EPA*, 809 F.2d 1 (D.C. Cir. 1986) ............................................. 45

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) ...................................... 23

*IRAP v. Trump*, 857 F.3d 554 (4th Cir. 2017) ............................................ 47

*Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860 (7th Cir. 2016) ...................... 18

*Kansas v. Nebraska*, 135 S. Ct. 1042 (2015) ............................................... 48

*Latuszkin v. City of Chicago*, 250 F.3d 502 (7th Cir. 2001) .......................... 28

*Lewis v. Casey*, 518 U.S. 343 (1996) ........................................................ 45, 52

*Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011) .................................................................................... 54

*Louisiana Public Service Commission v. FCC*, 476 U.S. 355 (1986) ...................................................................................... 16

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) ......................... 43

*McKenzie v. City of Chicago*, 118 F.3d 552 (7th Cir. 1997) .......................... 53

*Missouri v. Jenkins*, 515 U.S. 70 (1995) .................................................... 45

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018) ..................... 12, 26, 29, 30, 32, 33

*National Mining Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399 (D.C. Cir. 1998) ........................................................... 43, 44

*New York v. United States*, 505 U.S. 144 (1992) ....................... 22, 26, 29, 33

*NLRB v. Express Publishing Co.*, 312 U.S. 426 (1941) ................................. 45

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) ...................................................... 47

*Owner-Operator Independent Drivers Ass'n v. Federal Motor
Carrier Safety Administration*, 656 F.3d 580 (7th Cir. 2011) .............. 43

*Parts & Electric Motor, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228
(7th Cir. 1988) ........................................................................................... 36

*Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1
(1981) ............................................................................................................ 22

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) ........................................ 50

*Printz v. United States*, 521 U.S. 898 (1997) .......... 25, 26, 28, 29, 31, 32, 33, 35

*Reno v. Condon*, 528 U.S. 141 (2000) ................................................................ 31

*Richmond Tenants Organization v. Kemp*, 956 F.2d 1300 (4th Cir.
1992) ............................................................................................................ 47

*River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d
642 (7th Cir. 2011) .................................................................................... 38

*Russian Media Group, LLC v. Cable America, Inc.*, 598 F.3d 302
(7th Cir. 2010) ........................................................................................... 61

*SEC v. Sloan*, 436 U.S. 103 (1978)..................................................................... 40

*Salvidar v. Sessions*, 877 F.3d 812 (9th Cir. 2017) ......................................... 31

*Scherr v. Marriott International, Inc.*, 703 F.3d 1069 (7th Cir.
2013) ..................................................................................................... 53, 54

*Sierra Club v. Morton*, 405 U.S. 727 (1972) .................................................... 52

*Solid Waste Agency of Northern Cook County v. U.S. Army Corps
of Engineers*, 531 U.S. 159 (2001) ..................................................... 16, 23

*South Dakota v. Dole*, 483 U.S. 203 (1987)...................................................... 22

*Steinle v. City & County of San Francisco*, 230 F. Supp. 3d 994
(N.D. Cal. 2017)......................................................................................... 32

*Students v. United States Department of Education*, 2016 WL
6134121 (N.D. Ill. Oct. 18, 2016).......................................................... 58

*Sugarman v. Dougall*, 413 U.S. 634 (1973) ..................................................... 28

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ......................... 50, 52

*Texas v. United States*, 201 F. Supp. 3d 810 (N.D. Tex. 2016) ...................... 58

*Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277 (7th Cir. 1998) ...................................................................................................... 36

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) ......................................................... 56

*Trump v. IRAP*, 137 S. Ct. 2080 (2017) ....................................................... 48, 58

*Tula-Rubio v. Lynch*, 787 F.3d 288 (5th Cir. 2015) ........................................ 31

*United States v. Baucum*, 80 F.3d 539 (D.C. Cir. 1996) ................................. 26

*United States v. California*, 314 F. Supp. 3d 1077 (E.D. Cal. 2018) ... 31, 33, 62

*United States v. Mendoza*, 464 U.S. 154 (1984) ........................................ 57, 59

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ................................... 44

*United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483 (2001) ...................................................................................................... 49

*United States v. Stevens*, 559 U.S. 460 (2010) ................................................ 47

*United States v. Texas*, 136 S. Ct. 2271 (2016) ............................................... 47

*Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427 (2014) ........................ 21

*Virginia Society for Human Life, Inc. v. FEC*, 263 F.3d 379 (4th Cir. 2001) ...................................................................................................... 54

*Virginian Railway Co. v. Railway Employees*, 300 U.S. 515 (1937) .............. 48

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ...................................... 48

*Whitman v. American Trucking Ass'ns*, 531 U.S. 457 (2001) .......................... 20

*Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016) ................. 46, 54

*Whole Woman's Health v. Lakey*, 46 F. Supp. 3d 673 (W.D. Tex. 2014) ...................................................................................................... 46

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971) ........................................... 47

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) ....................... 47

## DOCKETED CASES

*City of Evanston & United States Conference of Mayors v. Sessions*, No. 18-4853 (N.D. Ill.) ......................................... 49, 60

*City of Philadelphia v. Sessions*, No. 18-2648 (3d Cir.) ............................ 21, 23

*City of Los Angeles v. Sessions*, No. 17-7215 (C.D. Cal.) ................................. 49

*Doe v. Trump*, No. 17-1597 (D.D.C.) ................................................... 58

*Hawaii v. Trump*, No. 17-50 (D. Haw.) ................................................ 59

*IRAP v. Trump*, No. 17-361 (D. Md.) ................................................... 59

*Karnoski v. Trump*, No. 17-1297 (W.D. Wash.) ......................................... 58

*Regents of the University of California v. Department of Homeland Security*, No. 18-15068 (9th Cir.) ......................................... 43

*Sessions v. Chicago*, No. 17A-1379 (U.S.) ............................................... 60

*State of New York v. Department of Justice*, No. 18-06471 (S.D.N.Y.) ........................................................................... 49

*Stockman v. Trump*, No. 17-1799 (C.D. Cal.) ........................................... 58

*Stone v. Trump*, No. 17-2459 (D. Md.) ................................................. 58

*Trump v. Hawaii*, No. 17-965 (U.S.) ................................................... 58

*United States v. California*, No. 18-490 (E.D. Cal.) ..................................... 24

*Washington v. Trump*, No. 17-141 (W.D. Wash.) ......................................... 59

## CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const. art. III, § 1 ................................................................. 45

5 U.S.C.

§ 702 ......................................................................................... 52
§ 704 ......................................................................................... 42
§ 706 ........................................................................ 42, 43, 44, 52

8 U.S.C. § 1373 ......................................................................... *passim*

12 U.S.C. § 25b ................................................................................ 34

26 U.S.C. § 3402 .............................................................................. 22

34 U.S.C.

§ 10102 ..................................................................................... *passim*
§ 10152 ........................................................................ 7, 20, 36, 40
§ 10153 ..................................................................................... *passim*
§ 10156 ............................................................................................. 7
§ 10157 ....................................................................................... 39
§ 10228 ....................................................................................... 34
§ 10231 ....................................................................................... 40
§ 10251 ....................................................................................... 41
§ 20927 ................................................................................. 21, 39
§ 30307 ....................................................................................... 21
§ 60105 ................................................................................. 20, 38

42 U.S.C. § 300v-1 ........................................................................ 40

47 U.S.C. § 224 .............................................................................. 22

49 U.S.C. § 5125 ............................................................................ 34

Chi. Mun. Code

§ 2-173-005 .................................................................................... 5
§ 2-173-020 .................................................................................... 6
§ 2-173-042 .................................................................................... 6

## RULES AND REGULATIONS

28 C.F.R. § 66.12 (2014) .............................................................. 37

Fed. R. Civ. P. 23, 1966 Advisory Committee's Note .......................... 59, 60, 61

## LEGISLATIVE MATERIALS

H.R. Rep. No. 104-469 (1996) ......................................................... 30

H.R. Rep. No. 109-233 (2005) ....................................................... 6, 20

Stop Sanctuary Cities Act, S.1814, 114th Cong. (2015) .................................. 24

## OTHER AUTHORITIES

Allen, Kenneth J., *Federal Grant Practice* (2018).............................................. 37

Bray, Samuel L., *Multiple Chancellors*, 131 Harv. L. Rev. 417
    (2017) ........................................................................................ 55

Chicago Executive Order No. 85-1 (Mar. 7, 1985) .............................................5

Chicago Executive Order No. 89-6 (Apr. 25, 1989) ...........................................5

Dinan, Stephen, *Feds to begin distributing grant money to non-
    sanctuary cities*, Washington Times, June 27, 2018, ........................... 12

Federalist No. 78 (Hamilton) (McLean's ed., 1788) ....................................... 56

Federalist No. 83 (Hamilton) (McLean's ed., 1788) ....................................... 56

Story, Joseph, *Commentaries on Equity Jurisprudence* (Bigelow,
    13th ed. 1886)......................................................................... 56

Story, Joseph, *Commentaries on Equity Pleadings* (4th ed. 1848) ................. 56

# INTRODUCTION

For decades, Chicago has prioritized local crimefighting over federal civil immigration enforcement. That policy encourages vital cooperation between Chicago police and immigrant communities and makes residents safer. As this Court held, Chicago's policy involves no interference with the federal government's immigration enforcement. Rather, Chicago simply limits use of City funds and City employees' time to City priorities, consistent with Chicago's inherent right to self-government in our constitutional system of federalism.

The Attorney General evidently dislikes this arrangement. He wants local governments to work for him, to spend their own time and dime on federal civil immigration priorities. For local governments that do not voluntarily carry out his agenda, he seeks to extract obedience. Chicago filed this lawsuit after the Attorney General announced three conditions on the Byrne Justice Assistance Grant ("JAG") program, a formula grant that funds local law enforcement priorities. The conditions seek to force Chicago and other governments to abandon their welcoming policies, on pain of losing important public safety funding.

The new conditions would require Chicago and other cities to provide federal immigration agents with two days' notice before releasing suspected non-citizens from custody (the "notice" condition), give federal agents

unfettered access to local jails and detention facilities (the "access" condition), and comply with 8 U.S.C. § 1373, which requires local governments to allow their police officers to abandon their assignments and take up the Attorney General's immigration-related priorities (the "compliance" condition). The Attorney General imposed those conditions on the JAG program even though the JAG statute—consistent with the basic nature of a formula grant, and with Congress's intention to support local law enforcement priorities—confers no authority to impose policy conditions.

This Court, in a prior appeal involving the notice and access conditions, unanimously held that the new conditions are unauthorized. The district court has since permanently enjoined all three conditions. That decision correctly recognizes that the conditions are *ultra vires* and an affront to the fundamental constitutional requirements of federalism and separation of powers.

The Attorney General still has not identified statutory authority to support his weaponizing the nondiscretionary JAG formula grant. On the compliance condition, he claims that a ministerial provision of the JAG statute, concerning the form of the grant application and requiring the applicant to "comply with all provisions of this part and all other applicable Federal laws," allows him to require a certification of compliance with Section 1373, an immigration-related statute having nothing to do with federal

grants. Br. 16. That is wrong. The reference to "other applicable Federal laws" means only grant-related laws, not the entire U.S. Code. Moreover, Section 1373 violates the Tenth Amendment anti-commandeering doctrine and therefore is not an "applicable Federal law" at all. On the notice and access conditions, the Attorney General's only argument—that his conditions are authorized by a separate statute that confers no independent authority at all—repeats an interpretation this Court previously ruled "untenable."

The Attorney General's attempt to narrow the injunction fares no better. Unable to demonstrate the lawfulness of his JAG conditions, he nevertheless asks the Court to free his hand to impose them on other local governments. He argues, as a categorical Article III rule, that even when a plaintiff succeeds against a single, program-wide agency action, as Chicago did here, injunctive relief must be gerrymandered to benefit only the plaintiff before the Court. That novel position contravenes decades of Supreme Court precedent and practice and would invalidate the remedies provision of the Administrative Procedure Act ("APA"), which supplied the cause of action here.

The broad theme of the Attorney General's arguments appears to be that he is charged with enforcing the immigration laws, and that cooperation from local governments would make his job easier. That may be true, but the Attorney General is still bound by basic constitutional constraints. His desire

to swiftly fulfill his policy goals does not substitute for a grant of authority from Congress, nor does it justify the subversion of local governments' sovereign police powers. The district court correctly enjoined the Attorney General's unlawful action on a program-wide basis. This Court should affirm.

## JURISDICTIONAL STATEMENT

The amended jurisdictional statement of defendant-appellant Matthew G. Whitaker is complete and correct.

## ISSUES PRESENTED

1.      Whether the Attorney General can impose conditions on the JAG formula grant program that are not authorized by law and contradict the stated purposes of the grant program.

2.      Whether the district court, having held that the program-wide imposition of the challenged conditions was unlawful agency action, was within its authority to set aside that action and enjoin the Attorney General on a program-wide basis from imposing those conditions.

## STATEMENT OF THE CASE

### A.    Chicago's Welcoming City Ordinance ("WCO")

Since the 1980s, Chicago has followed a "Welcoming City" policy,

prioritizing local crimefighting over federal civil immigration enforcement.[1] Chicago's policy reflects a judgment that "limited local resources" should not be spent on "traditionally federal functions," R.26-3 at 3, and that enforcement of federal law by Chicago police officers will generate fear in immigrant communities and discourage "witnesses and victims" from cooperating with police, R.26-3 at 4, undercutting "the City's goals of protecting life and property, preventing crime and resolving problems." Chi. Mun. Code § 2-173-005.[2]

Chicago's judgment about the importance of Welcoming-City policies is supported by research and experience. Studies have found that these policies reduce crime. R.27-1, R.27-8 at 3. And police chiefs have explained that building trusting, productive relationships with immigrant communities "is essential to reducing crime and helping victims." R.27-2 at 1. The idea that policies like Chicago's encourage crime is a "[m]yth": There is "no support for the idea that immigrants are responsible for more crime" or that so-called "sanctuary policies lead to increased crime." R.27-8 at 9-10, 29.

In response to pressure from the federal Executive to assist with civil immigration enforcement, the Chicago City Council unanimously codified

---

[1]     *See* R.26-1 at 2 (Chicago Executive Order No. 85-1 (Mar. 7, 1985)); R.26-2 (Chicago Executive Order No. 89-6 (Apr. 25, 1989)).

[2]     Citations to "R.__" refer to district court docket entries.

Chicago's longstanding policies in 2006. With important exceptions for cases involving violent crime, R.26-4 § 2-173-042(c), the current WCO ensures that City officials will prioritize local policing by prohibiting certain federal civil law-enforcement activities—namely, responding to Immigration and Customs Enforcement ("ICE") inquiries about the "custody status or release date" of City detainees, granting "ICE agents access" to City detainees, or allowing ICE agents to use "[City] facilities for investigative interviews." *Id.* § 2-173-042(b)(1). The WCO also prohibits City officials from "request[ing] information about or otherwise investigat[ing] or assist[ing] in the investigation of the citizenship or immigration status of any person" unless required by statute. *Id.* § 2-173-020.[3] Under the WCO, Chicago police help enforce federal immigration law only where the subject is suspected of a serious crime.

## B.  The JAG Program

The JAG program is the primary source of federal criminal justice funding to state and local governments. With the JAG program, Congress provided local governments with "flexibility to spend [federal] money for [law enforcement] programs that work for them rather than … impose a 'one size fits all' solution." H.R. Rep. No. 109-233, at 89 (2005). Congress structured

---

[3]     On this basis, the WCO is consistent with Section 1373. *See* R.152 at 13-18.

the JAG program as a formula grant, under which the Attorney General "shall allocate" funds, 34 U.S.C. § 10156(d)(2)(A), "in accordance with" a formula based on population and crime statistics, *id.* § 10152(a)(1). By definition, such grants "are not awarded at the discretion of a state or federal agency, but are awarded pursuant to a statutory formula." *City of Los Angeles v. McLaughlin*, 865 F.2d 1084, 1088 (9th Cir. 1989).

A JAG application must contain only one substantive programmatic component: A plan indicating how the applicant will use its funds. *See* 34 U.S.C. § 10153(A)(6). An applicant is entitled to its allotment of JAG funds as long as it uses funds to advance "any one" of eight broadly defined objectives. *Id.* §§ 10152(a)(1)-(2), 10153(A)(6)(B).

Consistent with the nature of formula grants, the Attorney General's role in JAG grantmaking is limited to specifying the "form" of the application, 34 U.S.C. § 10153(A), and designating certain information that grantees must report, *id.* § 10156(d)(2)(A). No provision in the statute authorizes him to add new components or requirements at his discretion.

Chicago has received JAG funding since the program started in 2006. Chicago has used JAG funds to purchase police cruisers; to support the Force for Good Program, which helps nonprofit organizations working to reduce violence in at-risk neighborhoods; and, as proposed for FY2017, to fund "ShotSpotter" technology to better respond to shooting incidents. R.25 at 2-3;

R.27-2 at 1-2; R.71-1 at 2.

### C. New Policy Conditions On The JAG Program

In July 2017, the Attorney General announced new conditions on JAG funds.

First, the "notice" condition requires grantees to "provide at least 48 hours' advance notice to [the Department of Homeland Security ("DHS")] regarding the scheduled release date and time of an alien in the jurisdiction's custody when DHS requests such notice in order to take custody of the alien pursuant to the Immigration and Nationality Act." R.30 at 9. The Attorney General imposed this requirement on all jurisdictions, even those—like Chicago—that operate only temporary lockup facilities where arrestees are held for less than 48 hours (often significantly less) before transfer or release on their own recognizance. *See* R.26-12; R.24 ¶¶ 9-10.

Second, the "access" condition requires grantees to "permit [DHS personnel] to access any correctional or detention facility in order to meet with" and interrogate anyone suspected of being a non-citizen. R.30 at 9.

Third, the "compliance" condition, first imposed in FY2016, requires grantees to certify compliance with Section 1373, which prohibits local

governments from restricting employees from sharing immigration-status information with federal immigration enforcers. *Id.*[4]

## D. Chicago's APA Claim

Within a week after the release of the FY2017 JAG application, Chicago filed suit. R.1. Chicago's complaint asserted that the conditions violate the separation of powers because the Attorney General lacks statutory authority to impose them, and that Section 1373 violates the Tenth Amendment. *E.g.*, *id.* ¶¶ 86-93, 131-133. Chicago asked the district court to "set aside" the new conditions under the APA as contrary to law. *E.g.*, *id.* ¶¶ 144-146. Jurisdictions across the country participated as amici, both directly and through national membership organizations. *See* R.51, R.56-1 at 6.

The Attorney General cited nothing in the JAG statute authorizing the notice and access conditions. Instead, he claimed authority under 34 U.S.C. § 10102(a)(6), a separate statute that allows an Assistant Attorney General ("AAG") to "exercise such other powers and functions as may be vested in [him] pursuant to this chapter or by delegation of the Attorney General,

---

[4] In relevant part, Section 1373 provides: "Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity ... may not prohibit, or in any way restrict, any government or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual."

including placing special conditions on all grants, and determining priority purposes for formula grants." As for the compliance condition, the Attorney General cited a provision conferring authority to require grantees to certify compliance with "all provisions of [the JAG statute] and all other applicable Federal laws." *Id.* § 10153(A)(5)(D).

### E. The Preliminary Injunction

On September 15, 2017, the district court preliminarily enjoined imposition of the notice and access conditions but not the compliance condition. R.78. The court agreed that the notice and access conditions "exceed[ed] statutory authority, and, consequently, the efforts to impose them violate the separation of powers doctrine and are *ultra vires*." *Id.* 19. The court applied the preliminary injunction program-wide because there was "no reason to think that the legal issues present in this case are restricted to Chicago or that the statutory authority given to the Attorney General would differ in another jurisdiction." *Id.* 41.

The Attorney General appealed the preliminary injunction of the notice and access conditions. Despite the lack of a stay, the Attorney General withheld FY2017 JAG funds from state and local governments across the country.

A panel of this Court unanimously held that the notice and access conditions were unlawful. This Court began by explaining how the Attorney

General's conditions place cities like Chicago "in the unwinnable position of either losing needed funding for law enforcement, or forgoing the relationships" with immigrant communities that are critical for "efficient law enforcement." A196. The Court also recognized that the term "sanctuary" city is a misnomer because policies like the WCO "do[] not interfere in any way" with federal civil immigration activities. *Id.*

On the merits, this Court held that the Attorney General's proposed reading of Section 10102(a)(6)—his sole claimed authority for the notice and access conditions—was "contrary to the plain meaning of the statutory language" and "untenable." A199-200. The Court also noted that numerous other features of the JAG statute undercut the Attorney General's claim of authority, including that Section 10102(a)(6) "would be an unlikely place for Congress to place a power as broad as the one the Attorney General asserts"; that the Attorney General's interpretation "is inconsistent with the goal of the statute to support the needs of law enforcement while providing flexibility"; and that "Congress knew how to grant" the authority the Attorney General claims, "and explicitly did so in another statute within the same Act." A199-202.

Finally, a majority affirmed the scope of the preliminary injunction, explaining that the Attorney General's main argument—that Article III categorically deprived the district court of authority to issue a program-wide

injunction—was a "non-starter." A204. Judge Manion dissented on the injunction's scope. A208-215.

The Attorney General sought rehearing en banc on only the scope of the injunction. No. 17-2991, Dkt.123. On June 26, 2018, the full Court stayed the effect of the preliminary injunction except as to Chicago. No. 17-2991, Dkt.128 & Dkt.134 (June 26, 2018). Within hours, the Attorney General announced that he would issue JAG awards—with the unlawful conditions attached.[5]

## F.    The Permanent Injunction

Meanwhile, on July 27, 2018, the district court granted Chicago's motion for summary judgment, permanently enjoining the Attorney General from enforcing all three challenged conditions. R.198. On the notice and access conditions, the court adopted "the same reasons stated in [its] preliminary injunction ruling and the Seventh Circuit's opinion." *Id.* 36-37. On the compliance condition, the court concluded that *Murphy v. NCAA,* 138 S. Ct. 1461 (2018), had "pull[ed] the lynchpin" from its prior ruling declining to enjoin the compliance condition, and held that Section 1373 violated Tenth Amendment anti-commandeering principles. R.198 at 17, 20-33. Having held Section 1373 unconstitutional, the court concluded that the Attorney

---

[5]    *See* Dinan, *Feds to begin distributing grant money to non-sanctuary cities*, Wash. Times, June 27, 2018.

General lacked statutory authority to require compliance with Section 1373 as an "applicable federal law" under the JAG statute. *Id*. 40.

On the scope of the injunction, the court underscored that there were "no intervening changes in facts or law" that "would shift [its] understanding of the original injunction's propriety," and again entered a program-wide injunction. R.198 at 55. In deference to this Court's partial stay of the preliminary injunction, the district court stayed the permanent injunction "in the same fashion." *Id*. 56.

The district court issued its final judgment on August 15, 2018, "set[ting] aside" the conditions under the APA and enjoining the Attorney General from imposing them. R.211 at 3; *see* R.212. This appeal followed.

## SUMMARY OF ARGUMENT

**I.** The Attorney General argues the compliance condition is authorized by 34 U.S.C. § 10153(A), which requires JAG applicants to certify, among other things, that they "will comply with all provisions of this part and all other applicable Federal laws." That provision does not authorize the compliance condition for two reasons.

*First*, the residual clause "all other applicable Federal laws" refers only to laws that relate to grants or grantees—not every law in the U.S. Code, as the Attorney General argues. That interpretation better respects the statutory text, as well as Congress's intent to constrain the Attorney

General's discretion under the JAG program.  It also avoids at least two Spending Clause violations that would arise from the Attorney General's expansive reading of what is otherwise a ministerial provision about the form of JAG applications.

*Second*, "other applicable Federal laws" cannot include Section 1373 because Section 1373 is unconstitutional, and thus not an "applicable Federal law" at all.  Under the anti-commandeering doctrine, federal laws that require local governments to administer a federal program, with no option to decline participation, violate the Tenth Amendment and basic principles of federalism.  Section 1373—which orders local governments to allow their employees to drop their assigned duties and aid in the federal government's immigration enforcement—does just that.

**II.**    The Attorney General claims authority for his notice and access conditions based on the same inapposite provision, 34 U.S.C. § 10102(a)(6), that this Court held confers no independent power.  As this Court explained, the Attorney General's contrary reading is "untenable" as a matter of text, and would undercut the JAG's program's formula-grant design.  That ruling is law of the case and remains correct.

**III.**    Finally, the Attorney General argues that the program-wide injunction is unconstitutional.  His position flies in the face of the APA, which provides that a court "shall set aside" agency action that is contrary to law.

Here, the district court held that the agency action at issue was the Attorney General's program-wide imposition of the JAG conditions, and the Attorney General does not challenge that ruling. For that unlawful action, the district court granted proper APA relief. Cases from the Supreme Court and this Court are clear: The judicial power includes the power to order relief tailored to the claim and the violation, and is not artificially constrained by the prospect that some "non-party" might also benefit from stopping illegal governmental action.

The Attorney General's contrary position is based on a profound misreading of the case law. He repeatedly cites cases where plaintiffs sought to use their standing with respect to one claim to seek separate relief on another, separate claim. But this case involves a single claim for injunctive relief against a single unlawful agency action by a single defendant.

No equitable limitation or historical practice bars the injunction entered here, either. And far from favoring the Attorney General, policy considerations support the injunction. There is nothing to be gained, and everything to lose, by requiring hundreds or thousands of identically-situated state and local governments to file individual lawsuits, all seeking the same relief against the same unlawful conditions. And while a class action might have been possible, it was not the only way to litigate the issues; moreover, the Attorney General has resisted the class-action vehicle.

# ARGUMENT

## I.  THE COMPLIANCE CONDITION IS UNLAWFUL

An Executive agency "has no power to act … unless and until Congress confers power upon it."  *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).  Under basic separation of powers principles, agencies' "power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is *ultra vires*."  *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).  Moreover, when an agency attempts to "upset the usual constitutional balance of federal and state powers," the agency's authority must be "'unmistakably clear in the language of the statute.'"  *Gregory v. Ashcroft*, 501 U.S. 452, 460-461 (1991).  The need for such clear authority is greatest where the federal government threatens to interfere with "the States' police power," *Gonzales v. Oregon*, 546 U.S. 243, 274 (2006), especially based on a mere "administrative interpretation," *Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172-173 (2001).

All those principles are implicated here:  The Attorney General seeks, with the compliance condition (and the other challenged conditions, *infra* Part II), to control local law enforcement, without any authorization (let alone unmistakably clear authorization) from Congress.

The Attorney General claims he is authorized to impose the compliance condition pursuant to 34 U.S.C. § 10153(A), in which Congress set forth the administrative requirements for a valid JAG application. One of those requirements is a "certification" that, among other things, "the applicant will comply with all provisions of this part and all other applicable Federal laws." *Id.* § 10153(A)(5)(D).[6] Based on this provision, the Attorney General claims (at 8, 22) sweeping power to "specifically designat[e]" provisions of the U.S. Code as conditions on the JAG program, even where (as with Section 1373) Congress itself did not provide for enforcement of the designated provision through federal grant programs.

That is wrong for two reasons. First, as a matter of statutory interpretation, the phrase "all other applicable Federal laws" refers only to the laws that govern Chicago *as a grantee*—not every provision in the U.S. Code that could conceivably be interpreted to apply to Chicago in any circumstance. And second, if "all other applicable Federal laws" could be read to encompass every statute on the books that applies to Chicago in any way, then "applicable Federal laws" *still* cannot include Section 1373, because

---

[6]     The Attorney General argues in passing (at 22-23) that the compliance condition was authorized pursuant to his powers to place "special conditions" on all grants and to "determin[e] priority purposes" for formula grants. 34 U.S.C. § 10102(a)(6). That argument fails for the reasons explained in Part II, *infra.*

Section 1373 is unconstitutional and so is not a law that "appli[es]" to Chicago.

### A.    "All Other Applicable Federal Laws" Refers Only To Laws That Apply To Federal Grants Or Grantees

This Court can avoid addressing Section 1373's constitutionality by rejecting the Attorney General's limitless reading of Section 10153(A)(5)(D), under which he may turn any provision in the U.S. Code into a grant condition, no matter how far afield from the JAG program, and regardless of whether the law is even constitutional as a standalone provision.  Br. 21-22. Chicago's interpretation—that Section 10153(A)(5)(D) requires JAG applicants to certify compliance only with statutes that govern federal grants—is manifestly correct.  And because Section 1373 is not a grant-related statute, the compliance condition fails for that reason alone.

Statutory analysis starts with the text.  *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016).  The Attorney General focuses narrowly (*e.g.*, at 21) on the phrase "applicable Federal laws," but "'a phrase gathers meaning from the words around it.'"  *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). Section 10153(A)(5)(D) requires a certification that "the applicant will comply with [1] all provisions of this part [the JAG statute] and [2] all other applicable Federal laws."  This list of clauses and the use of the term "other" in the second clause makes clear that "all other applicable Federal laws" is a

residual clause.  The statute therefore should be interpreted "to give independent effect to the statute's enumeration" of the earlier phrase. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001).

That is where the Attorney General's reading first runs aground: Construing "applicable Federal laws" to mean *all* laws applicable to a JAG grantee would mean the preceding phrase, "all provisions of this part," performs no function, because the "provisions of this part" are themselves applicable federal laws.  Congress could, in other words, have accomplished the Attorney General's interpretation simply by requiring the applicant to certify compliance with "all applicable Federal laws."  By contrast, reading the residual clause using the canon of *ejusdem generis*—whereby general words following specific words "are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words," *Circuit City*, 532 U.S. at 114-115—gives effect to each part of the statute: "[A]ll provisions of this part" identifies the nature of the laws embraced by the residual clause "other applicable Federal laws," namely laws that, like the "provisions of this part," expressly apply to federal grants or grantees.

The broader statutory context supports this reading.  As "a formula grant, rather than a discretionary grant," the JAG statute requires the Attorney General to allocate funds according to "a carefully defined calculation" based on population and crime statistics.  A200-201; *see also* 34

U.S.C. § 10152(a)(1).  The program was created "to give State and local governments more flexibility to spend money for programs that work for them rather than to impose a 'one size fits all' solution."  H.R. Rep. No. 109-233, at 89 (2005).  As this Court previously explained, the Attorney General's authority to deviate from the distribution formula is, accordingly, "strictly circumscribed" within "precise limits."  A201.  Requiring applicants to certify compliance with the entire U.S. Code—or an ever-changing subset selected at the Attorney General's uncabined discretion—would severely undercut the non-discretionary, formula-based character of the JAG program.  Addressing the notice and access conditions, this Court found it "inconceivable" that Congress would have buried in a minor provision the power to "abrogate the entire distribution scheme" of the JAG statute.  A201.  So too here:  Congress would not "alter the fundamental details of" the program it designed in an "ancillary provision[]" setting forth ministerial grant application requirements; it does not "hide elephants in mouseholes."  *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *accord* A202.

Moreover, the Attorney General's reading of "applicable Federal laws" would render superfluous other statutes allowing the Attorney General to reduce (but not eliminate) JAG funding to jurisdictions that do not comply with specific statutory obligations.  *See* 34 U.S.C. § 60105(c)(2) (authorizing a "10-percent reduction" for failure to comply with death-in-custody reporting

requirements); *id.* § 20927(a); *id.* § 30307(e)(2)(A); *see also* A207 (prior panel discussing these provisions). "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).[7]

The Department of Justice's historical practice further supports Chicago's reading of Section 10153(A)(5)(D). Until FY2016, the Department did not require applicants to certify compliance with statutes that lacked a connection to grants. *See* R.69 at 8 & n.6 (describing statutory basis for all certification conditions other than Section 1373). An agency's claim to have suddenly "discover[ed] in a long-extant statute an unheralded power" of "'political significance'" should be met with "a measure of skepticism." *Utility Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2444 (2014).

Statutory constructions that raise "serious constitutional problems" can be rejected for that reason alone. *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988). The Attorney

---

[7]    Elsewhere, the Attorney General has argued that those provisions are not superfluous because they "set limits" on the funds the Attorney General can withhold for non-compliance. Reply Brief 10, *City of Philadelphia v. Sessions*, No. 18-2648 (3d Cir. Oct. 18, 2018). That reading is implausible. Reasoning from the conclusion that he possesses broad power to condition JAG funds, he argues that provisions that impose *sanctions* on grantees that do not comply with particular statutes chosen by Congress (*e.g.*, reporting of deaths in police custody) are actually meant to *protect* such non-complying recipients from his supposedly unlimited power.

General's interpretation of Section 10153(A)(5)(D) raises at least two major problems under the Constitution's Spending Clause. First, "if Congress desires to condition the States' receipt of federal funds, it must do so unambiguously." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987); *accord Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). A provision "is ambiguous where its text, literally read, admits of two plausible interpretations." *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 419 n.2 (2005). Here, as the district court acknowledged, R.78 at 21, Chicago's narrower reading of the statute is plausible. That plausible interpretation alone means that Congress did not unambiguously require grant applicants to certify compliance with the entire U.S. Code.

Second, a condition on federal funds must "bear some relationship to the purpose of the federal spending." *New York v. United States*, 505 U.S. 144, 167 (1992). But under the Attorney General's limitless interpretation, he can mandate that a JAG applicant's chief legal officer certify compliance with countless provisions of federal law that have no relationship to the purpose of the JAG program. *E.g.*, 26 U.S.C. § 3402(q)(1) (requiring withholding of federal taxes when paying out lottery winnings); 47 U.S.C. § 224(c) (requirements concerning utility pole attachments). Indeed, elsewhere the Attorney General has pressed the extraordinary position that

the Spending Clause's "relatedness requirement … does not apply" to Section 10153(A)(5)(D)—meaning that he may pluck literally any law from the U.S. Code and plug it into the JAG program. Opening Br. 40, *City of Philadelphia v. Sessions*, No. 18-2648 (3d Cir. Aug. 30, 2018). At a minimum, that interpretation is at the outer limits of Congress's power. Yet the Attorney General points to no "clear indication that Congress intended that result." *Solid Waste Agency*, 531 U.S. at 172.[8]

In sum, the statutory text, context, and canons of constitutional avoidance all dictate that the phrase "all other applicable Federal laws" encompasses only laws that apply to federal grants or grantees.

### B. "All Other Applicable Federal Laws" Does Not Encompass Unconstitutional Laws Like Section 1373

If the Court accepts the Attorney General's argument that "other applicable Federal laws" means literally every section of the U.S. Code that applies to Chicago, then it must address whether Section 1373 is constitutional. Because Section 1373 violates the Tenth Amendment anti-

---

[8]     The district court relied on broad interpretations of the term "applicable law" in other statutes. R.78 at 22-23. While in some cases a broad reading is necessary to avoid "a pointless tautology," *Department of Treasury, IRS v. Federal Labor Relations Auth.*, 494 U.S. 922, 930 (1990), in other contexts the better reading of the term will be narrower, *e.g.*, *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 (9th Cir. 2009) ("[T]he term 'applicable' has a range of meanings.").

commandeering doctrine, it is not constitutional and is not an "applicable" law.

## 1.   Unconstitutional laws are not "applicable … laws"

A law that is unconstitutional cannot be an "applicable Federal law[]," regardless of how broadly that phrase is interpreted.  The Attorney General attempts to avoid this obvious point by suggesting (at 22) that Section 1373 might be "applicable" as a "funding condition" even if it is unconstitutional on a standalone basis.  But Section 1373 is not a funding condition; indeed, Congress has considered and *rejected* proposals to condition JAG funds on compliance with Section 1373.  *E.g.*, Stop Sanctuary Cities Act, S.1814, 114th Cong. § 2(b)(2) (2015).  Section 1373 regulates state and local governments directly.[9]

Under the Attorney General's proffered reading of the JAG statute, this Court must consider the constitutionality of Section 1373.  The Attorney General argues that "other applicable Federal laws" includes not only laws concerning grants but also all laws that "appl[y]" to Chicago on a standalone

---

[9]   The Attorney General suggests (at 22) that because Section 1373 lacks an "independent enforcement mechanism," he is permitted to enforce it as a condition on JAG funding.  That argument is disingenuous—the Attorney General is currently attempting to enforce Section 1373 against the State of California, Compl. ¶¶ 64-65, *United States v. California*, No.18-490 (E.D. Cal. Mar. 6, 2018), Dkt. 1.  Regardless, it has no bearing on whether Section 1373 is actually an "applicable law" under Section 10153(A)(5)(D).

basis, in any context.  That reading necessarily requires a determination whether Section 1373 actually *does* "appl[y]" to Chicago as a standalone requirement.  Because Section 1373 is unconstitutional, it does not apply.  The Attorney General's contrary view disregards the statutory text.  And it would mean he could resurrect unconstitutional laws struck down on anti-commandeering grounds—like the sports-betting law held unconstitutional in *Murphy*, or the firearms background-check statute invalidated in *Printz v. United States*, 521 U.S. 898 (1997)—and reimpose them at will as "applicable Federal laws" under the JAG program.  It is inconceivable that Congress meant to grant him such power.

Indeed, unconstitutional laws are not merely inapplicable; they are not fairly regarded as laws at all.  Terms like "federal law" or "state law," when used to incorporate a separate body of law, do not import provisions that are unconstitutional.  Thus, in *Branch v. Smith*, 538 U.S. 254 (2003), the Court explained that, where a statute described a State's congressional districts as being "redistricted in the manner provided by the law thereof," that "law" encompassed only valid, constitutional state redistricting laws.  *Id.* at 281.  As the Court explained, it would be "highly unusual" for the phrase "as state law requires" to apply "*even when state law is unconstitutional.*"  *Id.*  Or, as the D.C. Circuit has succinctly explained:  Once a law has been declared unconstitutional, "there is no valid 'law of the United States' to enforce."

*United States v. Baucum*, 80 F.3d 539, 540-541 (D.C. Cir. 1996) (per curiam) (interpreting provision giving federal courts jurisdiction over "all offenses against the laws of the United States").

### 2. Section 1373 is unconstitutional

### a. Section 1373 violates the anti-commandeering doctrine.

Congress may not "command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Printz*, 521 U.S. at 935. Congress's enumerated Article I powers authorize it "to regulate [private actors] directly," but they do not allow the federal government to "directly compel[] [states] to enact and enforce a federal regulatory program." *New York*, 505 U.S. at 161. Rather, in our system, federal laws that "issue orders directly to the States" violate their "'residuary and inviolable sovereignty'" and cannot stand. *Murphy*, 138 S. Ct. at 1475. The same rule applies to local governments. *Printz*, 521 U.S. at 931 n.15.

The anti-commandeering analysis is practical, not formalistic. *Printz*, 521 U.S. at 931. It is immaterial whether the federal law is couched as an affirmative command, *e.g.*, *New York*, 505 U.S. at 176 (law requiring States to enact waste regulations), or a negative prohibition, *e.g.*, *Murphy*, 138 S. Ct. at 1478 (law prohibiting States from enacting new sports-betting regulations). What matters is whether the challenged law "compromise[s] the structural framework of dual sovereignty." *Printz*, 521 U.S. at 932.

Section 1373 does that.  Subsection (a) blocks state and local "government entit[ies] or official[s]" from "prohibit[ing], or in any way restrict[ing]" their employees from exchanging immigration-status information with ICE.  8 U.S.C. § 1373(a).  Under subsection (b), "no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity" from maintaining immigration-status information or exchanging that information with ICE.  *Id.* § 1373(b).  Those provisions compromise state and local sovereignty in two ways.

First, Section 1373 wrests from state and local policymakers the ability to manage, control, and set priorities for their own personnel, because it forbids cities from "limiting the amount of paid time its employees use to communicate with [ICE]."  SA42.  Personnel decisions are "decision[s] of the most fundamental sort" for state and local governments.  *Gregory*, 501 U.S. at 460.

Second, the statute improperly transfers policymaking authority within local government.  Section 1373 empowers individual officers to decide what information they will share with ICE, overruling Chicago's elected and accountable policymakers, and its own rules of decision and chain of command.  That transgresses state and local governments' inherent power to choose the "officers who participate directly in the formulation, execution, or

review of broad public policy." *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973).[10]

*Printz* is on point.  There the Court struck down provisions of the Brady Act that required local law enforcement to "accept" notices of proposed gun sales and perform checks to determine whether the sales were lawful.  521 U.S. at 903-904.  Section 1373 likewise effectively requires local governments to accept federal requests for immigration-status information and then mandates that individual officers be allowed to spend the City's time and dime on efforts to respond to such federal requests.  The Attorney General argues that Chicago police officers are not required to "enforce" federal law by "arresting particular individuals or extending their custody."  Br. 29.  While those requirements would surely commandeer Chicago, so does severing Chicago's control over its own law enforcement personnel.  Depriving local governments of their "independence and autonomy" is unconstitutional. *Printz*, 521 U.S. at 928.

Section 1373's reorganization of federal, state, and local power transgresses all of the purposes of the anticommandeering doctrine.  The statute undercuts government accountability by blurring responsibility for

---

[10]    Notably, CPD officers, including supervisors, are not normally vested with policymaking authority. *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001).

governmental decisions, *Murphy*, 138 S. Ct. at 1477, because it "makes it difficult … to distinguish between state and federal policy in the immigration context," SA47. And Section 1373 expands the reach of federal immigration agents by effectively conscripting local law enforcement, which both makes "'tyranny and abuse'" from an enlarged federal government more likely and forces state and local governments to bear some of the monetary and non-monetary "costs of [federal] regulation." *Murphy*, 138 S. Ct. at 1477 (quoting *New York*, 505 U.S. at 181-182); *see Printz*, 521 U.S. at 918.

Throughout his brief, the Attorney General claims to seek "cooperation" with local governments like Chicago. But true cooperation is voluntary and respectful of local self-government; a truly cooperative scheme would allow a government "whose citizens do not wish it [to participate]" to "devote its attention and its resources to issues its citizens deem more worthy." *New York*, 505 U.S. at 174. Section 1373 mandates obedience, not voluntary cooperation. It bars local officials from prioritizing local policing over federal immigration enforcement, without allowing the "critical alternative" that marks the line between permissible intergovernmental cooperation and unlawful commandeering: being able to "decline to administer the federal program." *Id.* at 176-177.

**b. The Attorney General's attempts to save Section 1373 fail.**

The Attorney General cannot successfully defend Section 1373's

commandeering of local law enforcement.  To start, he suggests (at 23-24) that Chicago challenged Section 1373 only as a condition on JAG funds, and did not challenge Section 1373 itself.  That is just wrong.  Count four of Chicago's complaint challenged Section 1373 as "facially unconstitutional." A39 ¶ 133; *see also* R.6-1 ("Notice of Claims of Unconstitutionality" identifying challenge to 8 U.S.C. § 1373); SA38 (citing count four).[11]

The Attorney General also claims (at 26) that Section 1373 falls within an exception to the anti-commandeering doctrine for statutes that "evenhandedly regulat[e] an activity in which both States and private actors engage." *Murphy*, 138 S. Ct. at 1478.  That exception is self-evidently inapplicable.  Section 1373 regulates "Federal, State, or local government entit[ies] or official[s]."  8 U.S.C. § 1373(a).[12]  The legislative history is similarly explicit:  Section 1373 "is designed to prevent any State or local law, ordinance, executive order, policy, [or] constitutional provision" from interfering with communication between ICE and local government employees.  H.R. Rep. No. 104-469, at 277 (1996).

---

[11]    The district court later dismissed count four as moot.  That reflects that the final judgment contained a declaration that Section 1373 was unconstitutional, SA80, so no further relief was needed.

[12]    Although Section 1373(b) additionally prohibits any "person or agency" from restricting information sharing by local law enforcement, that "does not meaningfully expand the statute's scope …:  Who but a government actor can restrict the activities of a government entity or official?"  SA41-42.

The Attorney General argues (at 26-27) that the exception applies because the federal government ultimately seeks to regulate private actors— namely, non-citizens.  But the ultimate aims of federal immigration law are not controlling.  A statute that "require[s] state officials to assist in the enforcement of federal statutes regulating private individuals" still violates the anticommandeering doctrine.  *Reno v. Condon*, 528 U.S. 141, 151 (2000).  Thus, in *Printz*, for example, the law was ultimately intended to regulate private actors (namely, gun buyers), but the Court nonetheless rejected the claim that local governments could be forced to share "information that belongs to the State and is available to [law enforcement officers] only in their official capacity."  521 U.S. at 932 n.17.  Here too, the federal government seeks to compel local government actors to share governmental information that was collected or generated in the course of official law enforcement activity.[13]

---

[13]    According to the Attorney General, the phrase "information regarding immigration status" encompasses an individual's scheduled release date.  Br. 25-26.  That is far too broad.  Immigration "status" means simply the "states or conditions that an alien may possess under the INA."  *Salvidar v. Sessions*, 877 F.3d 812, 817 (9th Cir. 2017); *accord Tula-Rubio v. Lynch*, 787 F.3d 288, 293 (5th Cir. 2015).  It thus means whether a person is a citizen, lawful permanent resident, or undocumented person—not the date on which a city expects to release them from custody.  *See City & Cty. of San Francisco v. Sessions*, 2018 WL 4859528, at *28 (N.D. Cal. Oct. 5, 2018); *United States v. California*, 314 F. Supp. 3d 1077, 1103 (E.D. Cal. 2018); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 331 (E.D. Pa. 2018), *appeal filed*, No. 18-

The Attorney General is likewise wrong to suggest (at 30-31) that Section 1373 is permissible as a "reporting requirement." To start, the Court has never adopted such an exception; the majority in *Printz* did not address commandeering schemes that "require only the provision of information to the Federal Government," instead reserving judgment until such a scheme was "challenged in a proper case." 521 U.S. at 918. Moreover, the Attorney General does not argue that Section 1373 constitutes the type of "purely ministerial reporting requirement[]" that Justice O'Connor suggested in her *Printz* concurrence might be an exception to the anti-commandeering doctrine. 521 U.S. at 936. Nor would Section 1373, which allows state and local government employees to ignore orders and use their paid time to pursue federal civil immigration enforcement, fit within that hypothetical exception. *Printz* rejected an information-sharing requirement, like Section 1373, because it required "the forced participation of the States' executive in the actual administration of a federal program." *Id.* at 918. And *Reno*, the only other case the Attorney General cites for his "reporting requirement" exception, upheld the challenged statute not as an "information-sharing provision," but because it "evenhandedly regulate[d] an activity in which both States and private actors engage[d]." *Murphy*, 138 S. Ct. at 1478-1479 (citing

2648 (3d Cir.); *Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994, 1015 (N.D. Cal. 2017).

*Reno,* 528 U.S. at 151).  That exception does not apply here, either.  *See supra* 30.

Nor can the Attorney General save Section 1373 by recasting it (at 27-28) as a preemption provision.  As an initial matter, Section 1373 does not preempt WCO-type policies.  *See generally United States v. California*, 314 F. Supp. 3d 1077 (E.D. Cal. 2018), *appeal pending* No. 18-16496 (9th Cir.).  Beyond that, preemption doctrine can never resuscitate an unconstitutional law.  Preemption is "not an independent grant of legislative power," but rather, a "'rule of decision'" that specifies that "federal law is supreme in case of a conflict with state law."  *Murphy*, 138 S. Ct. at 1479 (citation omitted).  To preempt state or local law, a federal statute "must represent the exercise of a power conferred on Congress by the Constitution."  *Id.*  On an issue like whether Section 1373 is violates the anti-commandeering doctrine, the preemption analysis "merely brings us back to the question … whether laws conscripting state officers violate state sovereignty."  *Printz,* 521 U.S. at 925; *see also New York*, 505 U.S. at 162.

Similarly, preemption doctrine applies only to federal laws "that regulate[] the conduct of private actors, not the States."  *Murphy*, 138 S. Ct. at 1481.  For laws that directly regulate state and local governments, the commandeering analysis controls.  And again, Section 1373 exclusively targets government actors and government information.  Nor in any event

does Section 1373 read or operate anything like an express preemption provision, *cf., e.g.,* 12 U.S.C. § 25b(b) (expressly preempting certain state consumer financial laws); 49 U.S.C. § 5125 (expressly preempting laws applicable to transportation of hazardous materials).

The Attorney General also suggests (at 26, 29) that "obstacle preemption" principles justify Section 1373 or otherwise invalidate Chicago's WCO. That is wrong on multiple levels. First, this Court has already unanimously held that the WCO "does not interfere in any way with the federal government's lawful pursuit of its civil immigration activities." A196. That should end the matter.

Second, the Attorney General's obstacle-preemption argument ignores the first rule of preemption analysis: "[C]ourts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona v. United States*, 567 U.S. 387, 400 (2012); *see also Bond v. United States*, 572 U.S. 844, 858-859 (2014) ("'[W]e will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction.'"). The Attorney General does not attempt to show how or why the drafters of the INA thought local ordinances like the WCO were such a significant threat to federal immigration enforcement that such ordinances could not coexist with the INA's scheme. He simply asserts,

without citation, that the entire INA is "premised on the assumption that the federal government will be able to learn such aliens' release dates and seamlessly take them into federal custody." Br. 26. This unsourced, supposedly "implicit" "premise[]" (Br. 17) of the INA is nowhere close to the "clear and manifest purpose" that is required to preempt state and local police powers.

The INA gives the federal government no control over local governments' policing decisions, even those concerning the arrest or detention of a non-citizen. And Congress has affirmatively *prohibited* the Attorney General from using the JAG program "or any other Act" to "exercise any direction, supervision, or control over any police force." 34 U.S.C. § 10228(a). Of course, commandeering local police would "augment[] immeasurably" Attorney General's power to enforce his own priorities. *Printz*, 521 U.S. at 922; *see also id.* at 932-933. But the Constitution's commitment to federalism is made of stronger stuff. *Id.* Because Section 1373 contravenes that balance, it is invalid.

## II. THE NOTICE AND ACCESS CONDITIONS ARE UNLAWFUL

A unanimous panel of this Court held that the Attorney General's other JAG conditions—the notice and access conditions—are *ultra vires* and unlawful because Congress never authorized the Attorney General to impose them. A198-202. The Attorney General sought partial *en banc* review of the

scope of the injunction in that earlier appeal, but did not challenge the merits ruling. It is now the law of the case. *Parts & Elec. Motor, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 231 (7th Cir. 1988). The Attorney General seeks to avoid that conclusion by arguing (at 35) that the earlier panel decision involved a preliminary injunction rather than a permanent one, but nothing in the prior panel decision turned on that distinction. The case the Attorney General cites says only that a court should be "cautious in adopting findings and conclusions from the preliminary injunction stage" because those findings are "often based on incomplete evidence." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291-292 (7th Cir. 1998). This appeal involves the same legal issue as the prior appeal, and no contested factual issues. The prior panel decision controls.

Even if the Court considered the issue afresh, the prior panel's unanimous decision remains correct. Now as before, the sole statutory basis the Attorney General cites for his purported authority to impose the notice and access conditions on the JAG formula grant program is 34 U.S.C. § 10102(a)(6), a provision from outside the JAG statute that sets forth the responsibilities of the AAG for the Office of Justice Programs. A199. Now as before, his reading of that statute is "untenable." A200. And now as before, his imposition of the notice and access conditions without authority from Congress violates the separation of powers.

Section 10102(a)(6) provides that the AAG may "exercise such other powers and functions as may be vested in [him] pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants." That language does not independently grant any authority at all; it just authorizes the AAG to exercise power that is *elsewhere* vested in him or in the Attorney General by statute, "including" any such power to set special conditions or determine priority purposes. *See* A199-200. The use of the word "including" requires that conclusion: "Whatever follows the word 'including' is a subset of whatever comes before[.]" *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913, 922 (D.C. Cir. 2017); *see also Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 459-460 (7th Cir. 2006) (items following "including" are merely "illustrative" of the set of things described before it).[14]

Even on his fourth time briefing the issue, the Attorney General still has no response to the statute's plain text. He attempts to rewrite the statute—claiming (at 35-36) that Section 10102(a)(6) says the AAG's "powers

---

[14] The Attorney General's reliance on Section 10102(a)(6) is misplaced for another reason, too: "special conditions" is a term of art in the grant context that refers to individualized conditions imposed on "high risk" grantees that have a history of performance issues or other red flags. Allen, *Federal Grant Practice*, §§ 25.4-25:14, at 600-611 (2018); *see also* 28 C.F.R. § 66.12 (2014) (regulation in effect when Congress amended § 10102(a)(6), defining "special conditions" as conditions placed on certain "high risk" grantees).

'includ[e] placing special conditions on all grants.'" But that simply ignores all of the text before the word "including."[15] He argues (at 36-37) that interpreting "including" according to the word's plain meaning would render the "special conditions" and "priority purposes" language that follows "superfluous." But every "including" clause is superfluous to the extent that it serves to illustrate rather than perform independent substantive work. *See Gaffney*, 451 F.3d at 459.[16]

Given the unambiguous statutory text, the Attorney General's resort to legislative history (at 32, 36) is precluded; this Court does "not conduct further inquiry" where the text is clear. *River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 649 (7th Cir. 2011), *aff'd sub. nom. RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012); *see* A200 (text "*alone* is sufficient to end the inquiry"). Nor do legislative

---

[15]    *American Surety Co. v. Marotta*, 287 U.S. 513 (1933), which the Attorney General cites (at 37), is not on point. That case did not hold that "including" is necessarily a term "of extension or enlargement," and involved a very different statute that did not contain anything like the "including" clause at issue here. *Id.* at 516-517.

[16]    Indeed, the Attorney General's interpretation would render vast swaths of statutory text superfluous by superseding the specific, limited grants of discretionary conditioning authority in the JAG statute itself, such as the authority to condition grants on submission of certain "data, records, and information," 34 U.S.C. § 10153(A)(4), or on compliance with a mandatory "program assessment component," *id.* § 10152(e), or to incrementally reduce JAG funds for jurisdictions that fail to comply with certain federal statutes, *id.* § 60105(c)(2). *See* A201.

purposes help him.  Congress structured the JAG program as a formula grant, provided no authority within the JAG statute to impose across-the-board substantive conditions, limited the Attorney General's policy discretion to "reserv[ing] not more than 5 percent" of JAG funds to address "extraordinary increases in crime" or to "mitigate significant programmatic harm," 34 U.S.C. § 10157(b), and tied JAG funding to particular federal policy objectives in only a few specific circumstances, *e.g.*, *id.* § 20927(a). Those legislative choices belie any intent to give the AAG *carte blanche* to impose substantive policy conditions on the JAG program.  That is why this Court previously—and correctly—ruled that the Attorney General's interpretation was "inconsistent with the goal of the [JAG] statute."  A200-201.

The Attorney General claims (at 32-33) that the Department of Justice has previously imposed conditions on JAG funds, for example relating to "human research subjects," information-sharing and privacy protection, "training," body armor, and the purchases of military-style equipment.  But each of those conditions was at least arguably authorized by Congress in

specific terms.[17]  And in any event, two wrongs do not make a right:  "'[A]n agency may not bootstrap itself into an area in which it has no jurisdiction by repeatedly violating its statutory mandate.'"  *SEC v. Sloan*, 436 U.S. 103, 119 (1978) (citation omitted).

The Attorney General also invokes (at 32) provisions of the JAG statute requiring applicants to provide an "assurance" that they will maintain and report certain "programmatic and financial" information, 34 U.S.C. § 10153(A)(4), and a "certification" that "there has been appropriate coordination with affected agencies," *id.* § 10153(A)(5)(C).  If he means to suggest that those provisions authorize the notice and access conditions, that argument, like all arguments raised for the first time on appeal, is waived. *See Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1302 (2018).  And in any event, neither of those provisions authorizes the conditions or otherwise "underscores" their "propriety," Br. 34. Those provisions merely empower the Attorney General to require applicants to provide information about how they use JAG funds.  The fact that, somewhere, a non-citizen is or will soon be released from local custody is not

---

[17]    *See* 42 U.S.C. § 300v-1 (human research); 34 U.S.C. § 10231(c) (information-sharing and privacy standards for "criminal intelligence systems"); *id.* § 10153(b)(1) (technical assistance and training for JAG recipients); *id.* § 10152(c) ("vehicles[,] … luxury items … or any similar matters").

the kind of "programmatic [or] financial" information regarding the JAG-funded program that is the subject of Section 10153(A)(4).  Nor are federal immigration officials the type of "affected agencies" referenced in Section 10153(A)(5)—rather, that provision refers to state and local agencies that are affected by the grant and the grant application.  *E.g.*, 34 U.S.C. § 10251(a)(6) ("public agency" defined as "department, agency, or instrumentality" of any *State or local government*).  The prior panel's unanimous decision remains correct.  The Attorney General's imposition of the notice and access conditions on the JAG program is *ultra vires*.

## III. THE DISTRICT COURT PROPERLY ENJOINED THE UNLAWFUL CONDITIONS ON A PROGRAM-WIDE BASIS

Chicago brought a facial challenge to the Attorney General's unlawful conditions, urging that his impermissible program-wide action should be "set aside" under the APA on a program-wide basis.  The Attorney General argues that federal courts are categorically barred from issuing such APA relief, and instead must gerrymander their remedies individual plaintiff by individual plaintiff.  That is wrong.

### A. Federal Courts Can Enjoin Illegal Agency Action On A Program-Wide Basis, Under The APA And Article III

The injunction was proper under the APA, as well as pursuant to Article III and basic equity principles.

### 1. The APA mandates program-wide relief

This Court can affirm the scope of the injunction on APA grounds alone. Chicago sought relief under the APA, 5 U.S.C. § 706, R.1 ¶¶ 85, 142-146, and the Attorney General in turn invoked an APA defense under 5 U.S.C. § 704, arguing that there was no "final agency action" because the agency had not yet acted on Chicago's JAG application. *E.g.*, SA32-35. The district court rejected that argument, holding the "agency action" at issue was the program-wide decision to impose new JAG conditions in the first place. *Id*. The Attorney General does not contest that ruling on appeal and has forfeited any challenge to it.

The APA instructs that courts "shall hold unlawful and set aside agency action" found to be, *inter alia*, "not in accordance with law," "contrary to constitutional … power," or "in excess of statutory … authority." 5 U.S.C. § 706(2). That is what the district court did: It concluded that the "agency action" at issue, namely the decision to impose the three conditions on the JAG program, exceeded the Attorney General's statutory authority; and then "set aside" that agency action by enjoining the Attorney General from enforcing the conditions. SA55-57, 61, 75-76.

Under Section 706, program-wide relief is the default remedy in a successful APA action against a program-wide rule or decision: "When a reviewing court determines that agency regulations are unlawful, the

ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989); *see also, e.g., Owner-Operator Indep. Drivers Ass'n v. Federal Motor Carrier Safety Admin.*, 656 F.3d 580, 589 (7th Cir. 2011) (vacating final rule in its entirety); *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007) (affirming program-wide injunction against EPA because APA allows courts to "hold unlawful and set aside" invalid agency action), *rev'd on other grounds sub nom. Summers v. Earth Island Inst.*, 555 U.S. 488, 500-501 (2009); *National Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409-1410 (D.C. Cir. 1998). The APA thus matches the scope of relief to the scope of the unlawful agency action. When agency action "consist[s] of a rule of broad applicability," the "single plaintiff, so long as he is injured by the rule, may obtain 'programmatic' relief that affects the rights of parties not before the court." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 913 (1990) (Blackmun, J., dissenting); *accord National Mining*, 145 F.3d at 1409 (*Lujan* dissent "express[ed] the view of all nine Justices on this question"). As the Ninth Circuit just held, program-wide relief is "the normal rule in APA cases." Op. at 73, *Regents of the University of California v. DHS*, No. 18-15068 (9th Cir. Nov. 8, 2018).

Section 706 ensures that the administrative state remains subject to the rule of law. The APA "was framed against a background of rapid

expansion of the administrative process as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices." *United States v. Morton Salt Co.*, 338 U.S. 632, 644 (1950).  Those concerns remain:  The Executive Branch "now wields vast power and touches almost every aspect of daily life." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 499 (2010). Section 706 ensures that agencies act lawfully, in both high-profile cases and run-of-the-mine actions challenging environmental, financial, or food-and-drug-related regulations, among others.  *E.g.*, *National Mining*, 145 F.3d at 1401 (dredging restriction); *Dimension Fin. Corp. v. Bd. of Governors of Fed. Reserve Sys.*, 744 F.2d 1402, 1411 (10th Cir. 1984) (Federal Reserve regulation), *aff'd*, 474 U.S. 361 (1986); *Heartwood, Inc. v. U.S. Forest Serv.*, 73 F. Supp. 2d 962, 980 (S.D. Ill. 1999) (forestry rule), *aff'd*, 230 F.3d 947 (7th Cir. 2000).  That similarly situated non-parties may benefit when program-wide action is "set aside" thus serves the APA's fundamental design.

Chicago obtained proper APA relief; the plain text of the APA instructed the district court to do precisely what it did: "set aside" the program-wide "agency action" that the court had found unlawful. This Court need go no further to affirm.

### 2. Federal courts have broad authority to enjoin unlawful action

Aside from the APA, federal courts have the power to enjoin a defendant from acting unlawfully. Federal courts possess the "judicial Power of the United States," U.S. Const. art. III, § 1, which includes the "broad power to restrain acts" by injunction, *NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435-437 (1941). *See also Hubbard v. EPA*, 809 F.2d 1, 11 n.15 (D.C. Cir. 1986) (a "court's power to enjoin unconstitutional acts by the government … is inherent in the Constitution itself" (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803))), vacated in part *sub nom Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988). In exercising that power, "the nature of the … remedy is to be determined by the nature and scope of the constitutional violation." *Missouri v. Jenkins*, 515 U.S. 70, 88, 89 (1995) (quotation marks omitted); *accord Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (scope of relief "is dictated by the extent of the violation established"). A "'systemwide remedy'" may be needed to redress unlawful action with "'systemwide impact.'" *Lewis v. Casey*, 518 U.S. 343, 359-360 (1996).

Some violations require "nationwide" or "statewide" relief—although courts do not always use those terms. Most obviously, a long line of cases recognizes that where government action is "unconstitutional on its face, an injunction prohibiting its enforcement is 'proper.'" *Whole Woman's Health v.*

*Hellerstedt*, 136 S. Ct. 2292, 2307 (2016) (citing *Citizens United v. FEC*, 558 U.S. 310, 333 (2010)).

*Whole Woman's Health* disproves the Attorney General's restrictive view of the judicial power. There, the Court affirmed a statewide injunction against provisions of a law that imposed undue burdens on the ability to obtain abortions in parts of Texas. 136 S. Ct. at 2303, 2307. Plaintiffs were seven Texas abortion providers. *Whole Woman's Health v. Lakey*, 46 F. Supp. 3d 673, 677 (W.D. Tex. 2014). They did not represent a class, nor did they argue that a statewide injunction was necessary to remedy their own injuries or those of their patients. Indeed, they sought only "as-applied relief" against application of the challenged provisions to two particular facilities and "'such other and further relief as the Court may deem just, proper, and equitable.'" 136 S. Ct. at 2307. Nevertheless, the Court rejected the argument that statewide relief invalidating the challenged law was not "proper." *Id.*

*Decker v. O'Donnell*, 661 F.2d 598 (7th Cir. 1980), is also instructive. There, this Court reviewed a "nationwide preliminary injunction" preventing the federal government from making certain payments found unconstitutional. *Id.* at 602. The federal defendants argued that it was improper to enjoin payments to school districts nationwide given that plaintiffs were all in Milwaukee. *Id.* at 617-618. This Court rejected that argument, holding that a nationwide injunction was appropriate because the

action was one "challenging the facial constitutionality of the statute" and plaintiffs' claims "relied primarily on the statute and regulation." *Id.* at 618.

A long line of program-wide injunction cases is in accord. *E.g.*, *United States v. Texas*, 136 S. Ct. 2271, 2271 (2016) (affirming, by equally divided vote, nationwide injunction against DAPA immigration policy); *Obergefell v. Hodges*, 135 S. Ct. 2584, 2604-2605 (2015) (affirming injunction restraining state prohibitions on same-sex marriage based on claims by individual couples); *United States v. Stevens*, 559 U.S. 460, 473 (2010) (invalidation of animal-cruelty video law in suit by individual plaintiff); *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971) (affirming invalidation of statute requiring retail liquor outlets to post lists of banned individuals, in suit brought by single individual); *Wrenn v. District of Columbia*, 864 F.3d 650, 668 (D.C. Cir. 2017) (enjoining gun law in case brought by individuals denied gun licenses); *IRAP v. Trump*, 857 F.3d 554, 605 (4th Cir. 2017) (en banc) (affirming program-wide injunction against travel ban), *vacated as moot*, 138 S. Ct. 353 (2017); *Fields v. Smith*, 653 F.3d 550, 559 (7th Cir. 2011) (affirming injunction against enforcement of unconstitutional statute in challenge by three inmates); *Horina v. City of Granite City*, 538 F.3d 624, 636 (7th Cir. 2008) (affirming facial invalidation of ordinance in suit by single individual); *Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308-1309 (4th Cir. 1992) (upholding nationwide injunction against HUD).

The Attorney General may argue that these cases did not have occasion to consider his newly minted Article III argument, but federal courts' "decades-long understanding" of their remedial authority is not so easily dismissed.  *E.g.*, *Hibbs*, 542 U.S. at 111-112 & n.13.  And in any case, the Supreme Court expressly considered the Attorney General's argument in *Trump v. IRAP*, 137 S. Ct. 2080 (2017) (*IRAP II*), where the Court refused to stay a nationwide injunction "with respect to parties similarly situated to [the individual plaintiffs]" who had brought the case, *id.* at 2088.  The Attorney General cannot reconcile any of this with his sharply limited view of federal courts' remedial powers.

Broad, program-wide injunctions are additionally supported by principles of equity.  Especially in public law cases, an injunction must be crafted to protect the public interest.  *E.g.*, *Kansas v. Nebraska*, 135 S. Ct. 1042, 1053 (2015) ("When federal law is at issue and 'the public interest is involved,' a federal court's 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'"); *see also, e.g.*, *Virginian Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 552 (1937).  Accordingly, "courts of equity should pay particular regard for the public consequences" in fashioning relief, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982), and may act in their "'sound discretion' to consider the

'necessities of the public interest' when fashioning injunctive relief," *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496 (2001).

A rule barring federal courts from protecting the public in the face of unlawful federal government action would ignore, rather than honor, the public interest. Here, for example, every court to consider the question has held that, in imposing the challenged JAG conditions, the Attorney General arrogated legislative power to strong-arm state and local governments into abandoning their right to self-government. *See* A195-202; SA21-62; *City & Cty. of San Francisco v. Sessions*, 2018 WL 4859528, at *1 (N.D. Cal. Oct. 5, 2018); *City of Los Angeles v. Sessions*, No. 17-7215 (C.D. Cal. Sept. 13, 2018), Dkt. 93 at 4; *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 616-617 (E.D. Pa. 2017). Approximately 1,400 local governments have repeatedly explained through representative amicus briefs that program-wide relief is needed "to protect the safety" of their communities. R.51 at 15. When a stay of nationwide relief left them exposed to the Attorney General's illegal action, dozens of state and local governments filed new lawsuits. *E.g.*, *State of N.Y. v. DOJ*, No.18-6471 (S.D.N.Y.); *City of Evanston & U.S. Conference of Mayors v. Sessions*, No. 18-4853 (N.D. Ill.). The Attorney General's position—that equity cannot go further than a limited, plaintiff-specific injunction, even when the Executive threatens *ultra vires* action against hundreds of state and local governments in one fell swoop—is not the law. "'The great

principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

### B. The Attorney General's Novel Rule Against Program-Wide Injunctions Lacks Support

The Attorney General asks this Court to forsake those venerable principles, effectively ruling that the APA's remedy provision is unconstitutional. His arguments fail.

#### 1. The Attorney General's Article III argument fails

Not a single member of the prior panel embraced the Attorney General's "Article III standing" argument, A204-205, and his argument is no more persuasive now. Article III requires that a plaintiff have standing for "each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and "for each type of relief sought," *Summers*, 555 U.S. at 493, but it imposes no additional constraint on the scope of the relief a court may order. Every case on which the Attorney General relies (at 40-45) simply applies this rule: A party that has (or had) standing to assert one claim cannot leverage that standing to obtain relief *on some other claim*. None of those cases suggests that where a plaintiff (like Chicago) has standing to assert a claim, and the claim entitles the plaintiff to program-wide relief (such as an APA claim challenging program-wide "agency action"), Article III

poses any barrier. This distinction unravels the Attorney General's entire argument.

The Attorney General's primary authority, *Gill v. Whitford*, 138 S. Ct. 1916 (2018), illustrates the distinction. There, plaintiffs brought an equal protection claim against allegedly partisan state redistricting. *Id.* at 1922-1923. Under settled law, equal protection gerrymandering claims require district-based injury; are adjudicated on a district-by-district basis; and entitle a plaintiff to district-specific, not statewide, relief. *E.g.*, *Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1265 (2015); *accord Gill*, 138 S. Ct. at 1931. Plaintiffs' problem was that they brought a claim requiring a showing of district-based injury without a plaintiff who lived in a gerrymandered district. 135 S. Ct. at 1930-1931. That is why the Court rejected a statewide remedy in *Gill*.

That *Gill* involved an equal protection claim was determinative. By contrast, as Justice Kagan pointed out in concurrence, the same plaintiffs would have had standing to seek statewide relief for First Amendment associational harms. *Gill*, 138 S. Ct. at 1938. That is because "[s]tanding, we have long held, 'turns on the nature and source *of the claim asserted.*'" *Id.* (emphasis added).

Under *Gill*, then, the question is whether the substantive law of the claim that the plaintiff has standing to assert entitles the plaintiff to broad

relief.  Here, it does:  An APA plaintiff has standing when he is aggrieved by a challenged "agency action," 5 U.S.C. § 702; *accord Sierra Club v. Morton*, 405 U.S. 727, 733 (1972), his cause of action is against that "agency action," and, if successful, he is entitled to have that "agency action" "set aside," 5 U.S.C. § 706.

In the Attorney General's other cases as well, a plaintiff with standing to assert one claim was merely denied the right to seek relief on a different claim.  In *Summers*, plaintiffs had standing to challenge one agency action (application of certain regulations to the Burnt Ridge Project), but they could not rely on a since-mooted injury to assert a *different claim* against a *different agency action* (involving other national forests).  555 U.S. at 494-496.  Likewise, in *Alvarez v. Smith*, 558 U.S. 87 (2009), the named plaintiffs' injuries had been forfeited or resolved such that "there was no longer … any actual controversy about the plaintiffs' particular legal rights," and thus no basis upon which to bring *different claims* that might be possessed by others. *Id.* at 92-94.  And in *Lewis*, plaintiffs had standing to challenge the library deficiency that injured them (inadequate services for illiterate inmates) but lacked standing to assert different claims against deficiencies that had not injured them (such as inadequate services for non-English speakers).  518 U.S. at 357-360.

There is a pattern here. The Attorney General has cobbled together cases where plaintiffs challenged conduct that did not cause them any injury or give rise to their particular claim, and thus had real standing problems. In that context, the admonition that "'standing is not dispensed in gross,'" *e.g.*, *Gill*, 138 S. Ct. at 1934, has meaning. Here, though, it does not, because Chicago plainly has standing to seek an injunction against the challenged JAG conditions.

This Court's decisions in *McKenzie v. City of Chicago*, 118 F.3d 552 (7th Cir. 1997), and *Scherr v. Marriott International, Inc.*, 703 F.3d 1069 (7th Cir. 2013), fit snugly in this framework. *McKenzie* involved due process challenges to a demolition ordinance. Both state law and the ordinance forbade demolition of property once its owner filed suit, and thus already "provide[d] plaintiffs with what they seek: their parcels cannot be demolished until the court rules on the merits." 118 F.3d at 555. That is why the court concluded plaintiffs "lack[ed] standing to seek … relief that benefit[ted]" parties not before the court: Because plaintiffs were protected, an injunction would have "affect[ed] *only* the rights of non-parties." *Id.* Likewise, in *Scherr*, the court analyzed plaintiff's case as fifty-seven distinct claims against fifty-seven separate hotels, each of which had installed the same spring hinge. *E.g.*, 703 F.3d at 1073. Because Scherr had been injured at only one hotel, she lacked standing to pursue a claim against the other fifty-

six. *Id.* at 1075. *Scherr*, too, stands for the unexceptional proposition that standing must be established for each separate claim. The Attorney General's categorical constitutional rule finds no support even in his own cases.

### 2. The Attorney General's equitable-principles argument fails

Once the Attorney General's Article III argument is rejected, his remaining arguments fall away. He argues (at 19, 46-48) that, even apart from Article III, it is "a black-letter rule" of equity "that injunctions 'should be no more burdensome than necessary to provide complete relief to the plaintiffs.'" But that principle does not mean relief cannot benefit others not in the case who have the same injury as the plaintiff, as is clear from controlling decisions like *Whole Woman's Health* and *Decker*, which affirmed injunctions that went beyond providing complete relief to only the immediate plaintiffs.[18]

---

[18] The Attorney General cites (at 46-47) two cases demonstrating only that equity may sometimes favor a narrower injunction. In *Virginia Society for Human Life, Inc. v. FEC*, 263 F.3d 379 (4th Cir. 2001), despite vacating the nationwide injunction before it, the Fourth Circuit acknowledged that nationwide injunctive relief *is* appropriate in some cases. *Id.* at 293. In *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011), the Ninth Circuit also recognized that nationwide injunctions may be appropriate in some circumstances. *Id.* at 664. But the court held that case-specific factors rendered a nationwide injunction inappropriate in that case. *Id.* at 665.

The Attorney General also argues (at 47-48) that nationwide injunctions are categorically improper in light of "longstanding historical practice." He invokes *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999), for the proposition that injunctive relief must be limited to what "was traditionally accorded by courts of equity." But *Grupo Mexicano*'s historical analysis does not aid the Attorney General.

First, *Grupo Mexicano* expressly provides that Congress may "expan[d]" on historical practice. 527 U.S. at 329. Here, Congress authorized courts to issue program-wide injunctions under the APA. Second, *Grupo Mexicano*'s central analogy is fundamentally inapplicable because *Grupo Mexicano* and the cases it relied on involved lawsuits between private parties, not lawsuits against the federal government. *E.g.*, *Atlas Life Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 568 (1939). The English Court of Chancery issued injunctions in private suits; it did not issue injunctions against the Crown *at all*—nationwide or otherwise. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 425 (2017) (cited at Br. 48). By contrast, federal courts unquestionably can enjoin the federal government.

And third, the Attorney General's history is incomplete. For example, English equity courts regularly used bills of peace to provide relief to classes of individuals sharing common interests or legal claims—even if not all

interested parties were joined in the action—to "prevent multiplicity of suits." Story, *Commentaries on Equity Jurisprudence* § 852, p. 172-173 (Melville M. Bigelow, 13th ed. 1886). Early commentators further recognized that the core feature of equity—both in England and in the founding era—was flexibility in ensuring "the very purposes of justice." Story, *Commentaries on Equity Pleadings* § 77, p. 101 (4th ed. 1848); *see also* Federalist No. 83, 549-550 (Hamilton) (McLean's ed., 1788) (equitable authority cannot be strictly cabined by "general rules"). Equity, then as now, *resists* categorical restrictions when they impede justice.

The Founders, too, recognized the importance of flexible equitable power, especially in cases like this one. While Hamilton "emphasize[d] the limited nature of equity," *Trump v. Hawaii*, 138 S. Ct. 2392, 2426 (2018) (Thomas, J., concurring), he also extolled the importance of a robust judiciary that "guard[s] the Constitution and the rights of individuals" from "dangerous innovations in the government," Federalist No. 78, at 508 (McLean's ed., 1788). The challenged JAG conditions, imposed by the Executive "without the authorization or even acquiescence of elected legislators," represent precisely the type of dangerous innovation that the judicial power, with its flexible equitable authority, was meant to check. A192.

### 3. The Attorney General's reliance on *Mendoza* is misplaced

The Attorney General argues (at 49-50) that *United States v. Mendoza*, 464 U.S. 154 (1984), applies here. *Mendoza* held that nonmutual offensive collateral estoppel against the federal government "would substantially thwart the development of important questions of law" by preventing percolation of legal issues through multiple courts of appeals. *Id.* at 160. But this case does not involve any form of collateral estoppel.

Program-wide injunctions—unlike collateral estoppel—impose no limits on the arguments the federal government is entitled to make. Collateral estoppel means that a decision in one case is "conclusive in a subsequent suit." *Mendoza*, 464 U.S. at 158. By contrast, an injunction does not foreclose the Attorney General from repeating in other fora his interpretation of Sections 10153(A)(4) or 10102(a)(6), or any other point, nor does it preclude other courts from considering such arguments. Nor as a practical matter do program-wide injunctions "take a toll on the federal court system" by "preventing legal questions from percolating through the federal courts." Br. 19.[19] Even after the district court issued its program-wide injunction in this

_____

[19] While the Attorney General also suggests (at 48) that nationwide injunctions might be inappropriate because they encourage forum shopping, he does not—and cannot—suggest that Chicago or any other litigants challenging the unlawful conditions engaged in forum shopping.

case, state and local governments in other Circuits filed and litigated separate actions challenging the same conditions. As a result, the Third Circuit is hearing another challenge to the same conditions this month, and the Attorney General has noticed an appeal in the Ninth Circuit as well.

There are numerous other examples. Multiple district courts independently considered the Obama Administration's policy requiring students to have access to restrooms that match their gender identity, notwithstanding a program-wide injunction. *See Texas v. United States*, 201 F. Supp. 3d 810 (N.D. Tex. 2016); *Board of Educ. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850 (S.D. Ohio 2016); *Students v. U.S. Dep't of Educ.*, 2016 WL 6134121, at *6 n.6 (N.D. Ill. Oct. 18, 2016). Litigation over President Trump's ban of transgender persons from military service has proceeded across three different Circuits notwithstanding entry of program-wide injunctions. *See Doe v. Trump*, No. 17-1597 (D.D.C.); *Karnoski v. Trump*, No. 17-1297 (W.D. Wash.); *Stockman v. Trump*, No. 17-1799 (C.D. Cal.); *Stone v. Trump*, No. 17-2459 (D. Md.). And litigation over various iterations of President Trump's travel ban proceeded in numerous courts after the entry of a program-wide injunction, and then "percolated" to the Supreme Court. *See IRAP*, 137 S. Ct. 2080; *Trump v. Hawaii*, No. 17-965 (U.S.); *see also Hawaii v.*

*Trump*, No. 17-50 (D. Haw.); *IRAP v. Trump*, No. 17-361 (D. Md.);

*Washington v. Trump*, No. 17-141 (W.D. Wash.).[20]

The Attorney General's position, by contrast, would "take a toll on the federal court system" by requiring a proliferation of copycat lawsuits and cookie-cutter injunctions to address a single unlawful agency action. Indeed, that is exactly what happened here when the Attorney General began enforcing his illegal conditions within hours of the partial stay of the district court's injunction. *See supra* 12, 50.

### 4. The Attorney General's reliance on Rule 23 is misplaced

The Attorney General's reliance on Rule 23 (at 49) fails as well. He confuses due process concerns about binding *absent parties* to a judgment, *e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974), even though here, only the Attorney General is bound—and he has enjoyed a full and fair opportunity to litigate. The absence of non-parties does not matter. *E.g.,* *Bresgal v. Brock*, 843 F.2d 1163, 1170-1171 (9th Cir. 1987) ("The fact that forestry labor contractors are not among the parties here does not prevent the

---

[20]  Concerns that a program-wide injunction might reduce percolation of legal issues in a way that implicates *Mendoza* would support, at most, limiting the scope of the injunction to this Circuit. The Attorney General does not seek that relief, although it was formerly commonplace for the federal government to acquiesce Circuit-wide in a court of appeals' final ruling.

district court … from issuing an injunction *directed to the Secretary* requiring him to enforce the act against forestry labor contractors.").  The Attorney General complains it is unfair that others should benefit from this litigation without being bound by it, and that Chicago should not have been able to "end-run" a class action.  Br. 54.  But third parties routinely benefit from litigation that strikes down a facially unconstitutional law, or that "set[s] aside" an agency regulation or policy under the APA.  The Attorney General does not even try to argue that those established practices undermine Rule 23.

Nor does the Attorney General actually want a single class-action litigation that will bind all parties, win or lose.  He has admitted that he would *oppose* class certification in this case, Stay App. 36, *Sessions v. Chicago*, No. 17A-1379 (U.S. June 18, 2018), just as he opposed class-like relief for the members of USCM, which represents 1,400 local jurisdictions, *City of Evanston*, No. 18-4853 (N.D. Ill. Aug. 3, 2018), Dkt. 15.  The Attorney General has no intention of being bound, regardless of the mechanism.  Rather, his litigation strategy is to force the victims of a single unlawful policy to file seriatim, individual cases to protect their rights, and thus impose the maximum cost on those victims, and also allowing the illegal action to continue against anyone who does not file suit.  That strategy is anathema to Rule 23.  *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617

(1997) ("'[t]he policy at the very core of the class action mechanism'" is

provide incentives to prosecute important rights).

The Attorney General's argument also ignores Rule 23's origins. Rule

23(b)(2), which authorizes injunctive classes, was modeled on civil rights

cases from the 1950s, where, before the advent of modern Rule 23, courts

nevertheless enjoined a challenged policy at its source. Fed. R. Civ. P. 23,

1966 Advisory Committee's Note (citing *Bailey v. Patterson*, 323 F.2d 201 (5th

Cir. 1963) (ordering desegregation of public transportation in Mississippi)).

The power to broadly enjoin unlawful government conduct preexisted Rule

23, and it remained a reason to deny class certification after the Rule. *See*

*Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973) (Friendly, J.) ("[A]n

action seeking declaratory or injunctive relief against state officials on the

ground of unconstitutionality of a statute or administrative practice is the

archetype of one where class action designation is largely a formality[.]").

The class action mechanism is one means of obtaining broad relief, but it is

not an obstacle to other forms of efficient justice.

## C.    The Program-Wide Injunction Was Proper

District courts have ample discretion in crafting injunctive relief. *E.g.*,

*Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir.

2010). Beyond the Attorney General's categorical arguments, he does not

contend that the district court abused its discretion in this case. Nor could

he.  Two overarching sets of considerations (in addition to the APA's requirements) strongly support program-wide relief here.

First, program-wide relief promotes judicial efficiency and orderly administration.  This case presents a pure question of law that would not "differ in another jurisdiction."  SA4.  The Attorney General acknowledges this, even pointing out (at 54) that pure questions of law "are most amenable to class-action treatment."  That point confirms the efficiency of enjoining a single, program-wide action on a program-wide basis.  "[J]udicial economy counsel[s] against requiring" a proliferation of identical lawsuits by local governments to protect their rights."  A117.

Second, program-wide relief protects against the grave structural threats posed by the Attorney General's lawless action.  A unanimous panel of this Court, and three district court judges, have held that the Attorney General violated the separation of powers when he imposed the notice and access conditions.  *See supra* 49.  Four district judges have recently held or expressed concern that the Section 1373 compliance condition offends federalism.  *See supra* 49; *accord California*, 314 F. Supp. 3d at 1101.  The Attorney General's encroachment on fundamental constitutional precepts "lend[s] itself to broa[d] injunctive relief" in this case.  A206.  Courts may not "forgo [their] judicial duty" to maintain the "delicate balance of our constitutional system."  *DOT v. Association of Am. R.Rs.*, 135 S. Ct. 1225,

1246 (2015) (Thomas, J., concurring). Where—as here—a court finds that challenged executive action violates the separation of powers, that alone may justify injunctive relief that will "check the improper allocation of executive power" by enjoining the entire unconstitutional exercise. *Id.*

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

/s/ Edward N. Siskel

<div style="display: flex;">

EDWARD N. SISKEL
Corporation Counsel of the City of Chicago
BENNA RUTH SOLOMON
Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
ANDREW W. WORSECK
Chief Assistant Corporation Counsel
JUSTIN A. HOUPPERT
SCOTT D. SPEARS
Assistant Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, IL 60602
(312) 744-7764

JAMIE S. GORELICK
DAVID W. OGDEN
ARI HOLTZBLATT
ARI SAVITZKY
JUSTIN BAXENBERG
MOLLY M. JENNINGS
JACK STARCHER
ARI EVANS
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

</div>

<div style="display: flex;">

RONALD S. SAFER
MATTHEW C. CROWL
NICK KAHLON
LAURA KLEINMAN
TAL C. CHAIKEN
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 West Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700

DEBO P. ADEGBILE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

</div>

November 8, 2018

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby

certifies that this brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B)(i) and Cir. R. 32(c).

1.     Exclusive of the exempted portions of the brief, as provided in

Fed. R. App. P. 32(a)(7)(B), the brief contains 13,998 words.

2.     The brief has been prepared in proportionally spaced typeface

using Microsoft Word 2016 in 13-point Century Schoolbook font.  As

permitted by Fed. R. App. P. 32(a)(7)(B), the undersigned has relied upon the

word count feature of this word processing system in preparing this

certificate.

/s/ Benna Ruth Solomon
BENNA RUTH SOLOMON
Deputy Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, IL 60602
(312) 744-7764

November 8, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2018, I electronically filed the attached Brief for Plaintiff-Appellee with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that service of all CM/ECF registered users will be accomplished by the CM/ECF system.

/s/ Benna Ruth Solomon
BENNA RUTH SOLOMON
Deputy Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, IL 60602
(312) 744-7764